*385
 
 Taft, J.
 

 By the provisions of Section 4001, General Code, “all the authority, powers and control vested in or belonging to” the city of Toledo “with respect to * # * the government, conduct and control of such university shall be vested in and exercised by” the respondents as the board of directors of the university; and, under Section 4003, General Code, “such directors * * * shall have all the powers and perform all the duties conferred or required by law in the government of such university.” This authority and power of the board is confirmed by the subsequently enacted Section 4003-1, General Code.
 

 Under the terms of the foregoing statutory provisions, it is clear that the city of Toledo could no longer have any authority, power or control with respect to the government, conduct and control of Toledo university, or perform any duties in such government.
 

 If Sections 4001, 4003 and 4003-1, General Code, apply in accordance with their provisions, it follows that the provisions of the charter or ordinances of the city of Toledo, relating to civil service, can have no application to the University of Toledo. If applied to that university, they would certainly relate to the government, conduct or control thereof.
 

 Relator does not contend that those sections of the Code should not be applied in accordance with their provisions. We have been referred to no provisions of the charter or ordinances of the city of Toledo tending to indicate that the provisions of that charter or of those ordinances, with reference to civil service, are “required by” that charter or those ordinances “in the government of” the university of Toledo. In our opinion, therefore, the provisions of the charter and the ordinances of Toledo, relating to civil service, are not applicable to those in the employment of the University of Toledo.
 

 However, relator contends further that, if the charter
 
 *386
 
 and ordinances of Toledo, relating to civil service, are not so applicable, then the statutory provisions, relating to civil service, are applicable to those employed by the university. In deciding this case, we do not believe that it is necessary to decide whether this contention of relator should be sustained. For the purposes of this decision, we will, without deciding the question, assume that the statutes relating to civil service do apply to those in the employ of the university.
 

 While Section 10 of Article XV of the Constitution, as amended in 1912, does declare the public policy of the state with reference to civil service, it contemplates that the enforcement of that policy shall be accomplished by legislation.
 

 In carrying out that policy, the General Assembly adopted Section 486-8, General Code, providing in part:
 

 “The civil service of the state of Ohio and the several counties, cities and city school districts thereof shall be divided into the unclassified service and the classified service.
 

 “(a) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required in this act:
 

 < £
 
 # #
 

 “7. All presidents, business manager [sic], administrative officers, superintendents, assistant superintendents, principals, deans, assistant deans, instructors, teachers and such employees as are engaged in educational or research duties connected with the public school system, colleges and universities; and the library staff of any library in the state supported wholly or in part at public expense.”
 

 Admittedly, if the auditor of the university is one
 
 *387
 
 of those described in Section 486-8 (a) 7, General Code, then, on his removal from employment by the university, relator would not be entitled to any written notice specifying any charges or grounds for removál, nor an opportunity to be heard in defense of such charges, nor an appeal to the state Civil Service Commission. This raises the question as to whether the auditor 'of the university is described by any of the words in Section 486-8 (a) 7, General Code. More specifically, can it be said that he is included within the words “administrative officers,” as used in those statutory provisions!
 

 On this question, relator has referred to the following cases:
 

 Scofield
 
 v.
 
 Strain, Mayor,
 
 142 Ohio St., 290, 51 N. E. (2d), 1012, holding that a health commissioner was not an officer within the meaning of Section 27 of Article II of the Constitution and that he was an employee of a city health district within the meaning of Section 486-19, General Code;
 
 State, ex rel. Bricker, Atty. Genl.,
 
 v.
 
 Gessner,
 
 129 Ohio St., 290, 195 N. E., 63, holding that membership on a county charter commission is a public office of trust within the meaning of Section 14 of Article IV of the Constitution;
 
 State, ex rel. Newman, State Librarian,
 
 v.
 
 Skinner,
 
 128 Ohio St., 325, 191 N. E., 127, 93 A. L. R., 331, holding that the position of state librarian is not an office within the contemplation of the provisions of Section 38 of Article II of the Constitution;
 
 Deering
 
 v.
 
 Hirsch,
 
 146 Ohio St., 288, 65 N. E. (2d), 649, holding that the director of recreation of a city was not a secretary, assistant or clerlr within the meaning of those words as used in paragraph 8, subdivision (a) of Section 486-8, General Code; and
 
 State, ex rel. Landis,
 
 v.
 
 Board of Commrs. of Butler County,
 
 95 Ohio St., 157, 115 N. E., 919, holding that a clerk of a board of county
 
 *388
 
 commissioners was not a county officer within the meaning of Section 2 of Article X of the Constitution.
 

 However, the word “officer” is a term of vague and variable import, the meaning of which may depend upon the circumstances under which it is used. To determine the correct meaning of that word in a particular instance, regard must be had to the subject matter with reference to which it is used and the intention of the user, as expressed by the other words which he uses. See
 
 State, ex rel.,
 
 v.
 
 Brennan,
 
 49 Ohio St., 33, 37, 38, 39, 29 N. E., 593.
 

 By the language used in Section 486-8 (a) 7, General Code, it appears that the General Assembly intended to include in the unclassified service practically all those engaged in a supervisory capacity in administering the business affairs of a public school system, college or university. Not only are the president and the business manager specifically named, but others, who have to do with the business affairs of such institutions, are named, such as administrative officers, superintendents, assistant superintendents, principals, deans and assistant deans. The words ‘ ‘ administrative officers” appear after the words “business manager.” Since the words “assistant superintendents” appear after the word “superintendents” and the words “assistant deans” appear after the word “deans,” it would appear logical to include within the words “administrative officers” one who assists the business manager in an important supervisory capacity.
 

 Relator’s amended petition sets forth portions of the bylaws of the board of directors of the university. Article II of those bylaws is headed “General University Officers and their Duties.” Section I of that article relates to the president, Section 2 to the “dean of university administration,” Section 3 to the director of finance, who is also the treasurer, Section 4 to the
 
 *389
 
 university librarian, Section 5 to the registrar, Section 6 to the personnel director, Section 7 to the dean of women, Section 8 to the director of the summer session, Section 9 to the director of evening sessions, Section 10 to the university editor, Section 11 to the director of university publicity, Section 12 to the director of alumni relations, and Section 13 to the university physician.
 

 Section 3, relating to the director of finance, provides in part:
 

 “He shall appoint, subject to the approval of the president of the university and to the board of directors, an auditor. The auditor shall be responsible for the authentic recording of all financial transactions of the university and of its various departments. He shall maintain at all times a modern and adequate system of accounting, supported by such journals, ledgers and subsidiary records as will clearly set forth the financial history of the university. He shall be responsible for the auditing of all receipts and disbursements.”
 

 Section 3 provides also that the director of finance “may, with the approval of the president of the university and the board of directors, appoint such assistants, in addition to an auditor, as hereinbefore provided (including a purchasing agent, disbursement clerk and superintendent of buildings and grounds) as may be necessary to the proper discharge of his duties as prescribed by these bylaws.”
 

 It may be suggested that the auditor is here merely referred to as an assistant of the director of finance. However, it should be noted that he is apparently regarded as an assistant of considerable importance since the provision for his appointment is given more prominence than that given for the apointment of any oilier assistants. One of the other assistants men
 
 *390
 
 tionecl in this section is the superintendent of buildings and grounds, who would clearly be described by the word ‘ ‘ superintendents, ” used in Section 486-8 (a) 7, General Code.
 

 Certain other provisions of the bylaws are significant. Thus, for example, by Article III, Section 5, all voucher checks are to be signed by the director of finance or an assistant appointed by him for that purpose “and countersigned
 
 by
 
 the
 
 auditor,
 
 or an
 
 assistant appointed by him
 
 for that purpose, provided always that
 
 such
 
 voucher
 
 check shall bear
 
 the
 
 signature of either
 
 the
 
 director of finance or
 
 the auditor.” (Italics supplied.)
 

 This section certainly indicates that the auditor is a principal assistant to the director of finance. As, under the provisions of the bylaws, the director of finance, though not named as such, would appear to come not only within the term “administrative officers” but also within the term “business manager,” then'it would seem reasonable to consider his principal assistant, the- auditor, as an administrative officer, within the meaning of the statutory language.
 

 It is significant that, apart from those who are admittedly described as “general officers,” the auditor is one of the few who are mentioned in the bylaws; and that his specific duties are enumerated therein.
 

 In our opinion, the auditor of the University of Toledo is an administrative officer, within the meaning of the language used in Section 486-8 (a) 7, General Code.
 

 If the office of auditor represents an employment in the unclassified civil service, then it follows, in the absence of some legislative or constitutional provision for tenure, that the relator cannot compel respondents to continue him in that employment.
 
 State, ex rel. Gordon, City Atty.,
 
 v.
 
 Barthalow, Aud.,
 
 150 Ohio St.,
 
 *391
 
 499, 83 N. E. (2d), 393. Since that is the relief which he seeks, the writ requested was properly denied.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Stewart and Matthias, JJ., concur.
 

 Hart, J., concurs in paragraphs two, three and four of the syllabus and in the judgment.
 

 Middleton, J., not participating.