OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES, CHAPTER NO. 471, ET AL., APPELLEES, *v.* CITY OF TWINSBURG ET AL., APPELLANTS.

[Cite as Ohio Assn. of Pub. School Emp., Chapter No. 471 *v.* Twinsburg (1988), 36 Ohio St. 3d 180.]

(No. 87-165—Decided April 27, 1988.)

*Robert G. Byrom,* for appellees.

*William A. LeFaiver,* city law director, for appellants city of Twinsburg et al.

*Hahn, Loeser & Parks* and *John A. Hallbauer,* for appellant Twinsburg City School District Board of Education.

MOYER, C.J. The issue presented by this appeal is whether the city of Twinsburg, a chartered municipality, may enact an ordinance limiting the constituency to be served by its local

civil service commission in view of R.C. 124.011(A), which directs the city's civil service commission to serve as the commission for the local multi-city school district. As noted above, the trial court and appellate court held that the ordinance was an unconstitutional enactment in direct conflict with the prevailing law of the state and, as such, must yield to the overriding law of statewide concern. For the reasons stated below, we hold that the city may enact such an ordinance.

R.C. 124.011(A) provides:

"When the territory of a city school district is not located in more than one city, the civil service commission of the city in which the district has territory shall serve as the commission for the school district. When the territory of a city school district is located in more than one city, the commission of the city that shall serve as the commission for the school district shall be the commission of the city that is the residence of the greatest number of pupils of the district."

Resolution of the issue in this case turns on whether the city's ordinance is an exercise of a power of local self-government with which the state cannot interfere. Section 7, Article XVIII of the Ohio Constitution provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3, Article XVIII provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In *State, ex rel. Canada*, v. *Phillips* (1958), 168 Ohio St. 191, 5 O.O 2d 481, 151 N.E. 2d 722, this court held that under Sections 3 and 7, Article XVIII, municipal charter and ordinance provisions enacted under the power of local self-government prevail over state statutes, and only municipal regulations enacted pursuant to a city's police powers are subject to the general laws of the state.

"As we view it, this constitutional provision [Section 3, Article XVIII] first gives municipalities 'authority to exercise all powers of local self-government,' and then, with respect to some of those powers, *i.e.*, the power 'to adopt and enforce * * * local police, sanitary and other similar regulations,' it limits the powers to adopt such regulations to such 'as are not in conflict with general laws.' However, the limitation is only such a limited limitation." *Id.* at 197, 5 O.O. 2d at 485, 151 N.E. 2d at 727.

See, also, *State Personnel Bd. of Review* v. *Bay Village Civil Service Comm.* (1986), 28 Ohio St. 3d 214, 217, 28 OBR 298, 302, 503 N.E. 2d 518, 521; *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 60, 26 OBR 42, 51, 496 N.E. 2d 983, 991 (Locher, J., dissenting); *State, ex rel. Allison*, v. *Jones* (1960), 170 Ohio St. 323, 10 O.O. 2d 417, 164 N.E. 2d 417; *State, ex rel. Petit*, v. *Wagner* (1960), 170 Ohio St. 297, 300-301, 10 O.O. 2d 344, 346, 164 N.E. 2d 574, 576-577. As Justice Wilkin stated in his concurring opinion in *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St. 338, 380, 103 N.E. 512, 523: "If all powers of municipal self-government must be subject to general laws, then clearly cities do not have home rule; they have only such powers of local self-government as the legislature of the state allows to them, and cities of Ohio will still remain under the domination of the state legislature."

It is well-settled in Ohio that

regulation of city civil service is within the powers of local self-government. *State, ex rel. Lentz,* v. *Edwards* (1914), 90 Ohio St. 305, 107 N.E. 768; *State, ex rel. Vogt,* v. *Donahey* (1923), 108 Ohio St. 440, 140 N.E. 609; *Hile* v. *Cleveland* (1928), 118 Ohio St. 99, 160 N.E. 621; *State, ex rel. Canada,* v. *Phillips, supra; State Personnel Bd. of Review* v. *Bay Village Civil Service Comm., supra.* As this court, in *State, ex rel. Lentz,* v. *Edwards, supra,* at 309-310, 107 N.E. at 769, said:

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the * * * [constitution]. As long as the provisions made in the charter of any municipality with reference to its civil service * * * do not conflict with any * * * [provision] of the constitution, they are valid and * * * discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

It follows from the authorities cited that the ordinance enacted in the case *sub judice* is a proper exercise of the city's powers of local self-government. The regulation solely concerns the jurisdiction of the city's civil service commission; it was not adopted pursuant to the city's police powers. Therefore, the ordinance supersedes the state statute.

The appellees argue, and the lower courts agreed, that the ordinance is a matter of statewide concern. Appellant city of Twinsburg contends that the formation and regulation of its local civil service commission is a matter of purely internal municipal affairs. As such, the city argues, it may exercise its powers of local self-government by limiting the jurisdiction of its civil service commission.

The test to determine whether an act of a municipality is a proper exercise of the power of local self-government is found in *Cleveland Elec. Illum. Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125, 129, 44 O.O. 2d 121, 123, 239 N.E. 2d 75, 78, quoting *Beachwood* v. *Bd. of Elections of Cuyahoga Cty.* (1958), 167 Ohio St. 369, 371, 5 O.O. 2d 6, 7-8, 148 N.E. 2d 921, 923:

" 'To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. *If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality.* However, if the result is not so confined it becomes a matter for the General Assembly.'

"Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest." (Emphasis added.)

The appellate court below cited this court's decision in *State, ex rel. Stough,* v. *Bd. of Edn.* (1977), 50 Ohio St. 2d 47, 49, 4 O.O. 3d 116, 117, 362 N.E. 2d 266, 268, a *per curiam* opinion, wherein the court, in two sentences, disposed of the issue, stating that: "Jurisdiction [of municipal civil service commissions] over city school district employees is granted and directed to be exercised by statute,

in accordance with the state's authority over public education under Section 3, Article VI of the Ohio Constitution. A city charter has no effect upon this statutory grant of jurisdiction." Section 3, Article VI,[2] however, is a broad provision concerning the organization, administration, and control of public schools. It does not require, either explicitly or implicitly, that public school employees be covered by the civil service laws. Nor is there such a requirement in Section 10, Article XV[3] of the Constitution, which mandates the method of making appointments and promotions for civil service employees of counties and cities. Furthermore, the court in *Stough* made no attempt to reconcile or distinguish *State, ex rel. Lentz*, v. *Edwards, supra*; *State, ex rel. Vogt*, v. *Donahey, supra*; *Hile* v. *Cleveland, supra*; *State, ex rel. Canada*, v. *Phillips, supra*; and *Cleveland Elec. Illum. Co.* v. *Painesville, supra*. The statement in *Stough* that a city charter has no effect upon R.C. 124.11(B) and 124.34, being inconsistent with the other reasoned and more precise holdings of this court upon which that issue is to be decided, is hereby overruled.

The court of appeals' conclusion that the issue is a matter of statewide concern produced by a need for uniform access by classified school district employees to municipal civil service commissions is mistaken. The ordinance enacted by the council is a general ordinance which "relates solely to the government and administration of the internal affairs of the municipality * * *." *Beachwood* v. *Bd. of Elections, supra,* at 371, 5 O.O. 2d at 7, 148 N.E. 2d at 923.

Two cases that serve as examples of an appropriate application of the test to be used in determining whether a matter is of statewide or local concern are *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 73 O.O. 2d 285, 337 N.E. 2d 766, and *Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253, 7 O.O. 3d 410, 374 N.E. 2d 154. In *Canton* v. *Whitman, supra,* at paragraph one of the syllabus, the court held that: "Prevention and control of dental caries, a common disease of mankind, is a proper subject, in relation to public health, for legislation enacted pursuant to the police power vested in the state, as well as in municipalities, by the general laws and the Constitution of the state of Ohio." And, in *Columbus* v. *Teater, supra,* at 261, 7 O.O. 3d at 414, 374 N.E. 2d at 159, the court recognized the obvious fact that preservation of a water supply for a city is a matter of concern which extends beyond the city limits when it held: "The authority enjoyed by municipalities under Article XVIII cannot be extinguished by the General Assembly. Nevertheless, under appropriate facts, the power possessed

---

[2] Section 3, Article VI of the Ohio Constitution provides:

"Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provi-

sion shall be made by law for the exercise of this power by such school districts."

[3] Section 10, Article XV of the Ohio Constitution provides:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitve examinations. Laws shall be passed providing for the enforcement of this provision."

by the General Assembly and Section 36 of Article II [conservation of natural resources] can override the interest of a city in constructing water supply impoundments located outside its corporate limits."

In both of the cited cases, the subject of legislative enactment, conservation of vital natural resources and the prevention of disease, clearly transcended the boundaries of a municipality. In the case before us, Twinsburg's restriction of the jurisdiction of its civil service commission to exclude the city school district and its employees has no impact upon anyone other than one city school district and its employees.

The ordinance in this case does not apply to employees outside the Twinsburg city school district's jurisdiction. Therefore, it does not have the extraterritorial effect necessary for application of the statewide-concern doctrine.

As noted above, the Ohio Constitution does not mandate that school district employees have access to municipal civil service commissions. See, also, *Civil Service Assn.* v. *Bd. of Edn.* (1977), 50 Ohio St. 2d 31, 4 O.O. 3d 85, 361 N.E. 2d 1342; and *Karrick* v. *Bd. of Edn.* (1963), 174 Ohio St. 467, 23 O.O. 2d 114, 190 N.E. 2d 256. Further, the school district could apply for civil service administrative services from the Director of Administrative Services under R.C. 124.07. School district employees thus could still have the civil service protections intended by the General Assembly when it enacted R.C. 124.011(A).

"The authority of the General Assembly, to enact laws applicable to cities pursuant to Section 10 of Article XV of the Constitution, is an authority to enact such laws to be applicable in cities only where and to the extent that such laws will not restrict the exercise by such cities of their powers of local self-government." *State, ex rel. Can-*

*ada, supra,* at paragraph three of the syllabus. Because R.C. 124.011 restricts the home-rule power of the city of Twinsburg to regulate the scope and extent of its civil service commission's jurisdiction, the statute must yield to the city's ordinance.

Thus, we hold that a chartered municipality, under its home-rule authority, may enact an ordinance limiting the jurisdiction of its civil service commission to only city employees notwithstanding R.C. 124.011(A).

The judgment of the court of appeals is reversed.

*Judgment reversed.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

DOUGLAS, J., dissenting. I must vigorously dissent to the position taken by the majority today. This decision is, I fear, an attempt to obtain through the back door what was not achieved via the front door in *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 26 OBR 42, 496 N.E. 2d 983, *i.e.,* the destruction of Ohio's Public Employees' Collective Bargaining Act. Appellees, and their right to enjoy the benefits of the civil service system, are manifestly of statewide concern. Yet, today's majority has permitted a city to unilaterally withhold those statutorily mandated services from appellees. Clearly, the next step might be allowing cities to enact ordinances abrogating appellees' right to collective bargaining. Moreover, the majority has ignored and is obviously attempting to circumvent both the will of the General Assembly and past decisions of this court.

The critical issue in this case is

whether the city of Twinsburg may unilaterally exempt itself, pursuant to its powers of local self-government, from compliance with the prevailing civil service laws and leave the local multi-city school district totally without a civil service system. For the reasons that follow, I believe that they cannot.

Initially, it must be noted that "* * * cities' powers of local self-government are not completely unfettered." *Kettering, supra,* at 53, 26 OBR at 45, 496 N.E. 2d at 986. A city's authority to enact legislation concerning civil service employees is limited both by Section 34, Article II[4] and by Section 10, Article XV of the Ohio Constitution. Section 34, Article II, provides:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; *and no other provision of the constitution shall impair or limit this power.*" (Emphasis added.)

This section "* * * manifest[s] the broad purposes of proclaiming and securing to the General Assembly the power to enact legislation establishing employee rights and protections." *Id.* at 57, 26 OBR at 48, 496 N.E. 2d at 989 (Douglas, J., concurring). Furthermore, "* * * it should be emphasized that the foregoing section was adopted *at the same time* as was the home-rule section. It should be obvious that the drafters of * * * [this section] consciously included * * * a broad grant of authority to pass laws 'for the comfort, health, safety and general welfare of all employees' and then provided further that no other provision of the Con-

stitution shall limit the power to enact legislation for the welfare of employees. If this section is read in the way in which it is written, there is no conflict on this subject between state legislative authority and the power granted local governments under home rule." (Emphasis *sic.*) *Id.* at 57, 26 OBR at 49, 496 N.E. 2d at 989.

Similarly, in *State, ex rel. Bd. of Trustees of Pension Fund,* v. *Bd. of Trustees of Relief Fund* (1967), 12 Ohio St. 2d 105, 41 O.O. 2d 410, 233 N.E. 2d 135, a unanimous Supreme Court, interpreting Section 34, Article II, quickly disposed of the home-rule argument by stating that "[t]here can be no question that the adopters, the people, intended this section of the Constitution to apply both to local government and state employees. The cities and towns and other political subdivisions of the state of Ohio constitute en masse one of the largest of the employers in the state. It is our conclusion that the firemen and police of various localities of Ohio are employees within the scope of this provision. It appears in clear, certain and unambiguous language that no other provision of the Constitution may impair the intent, purpose and provisions of the above section of Article II." *Id.* at 107, 41 O.O. 2d at 411-412, 233 N.E. 2d at 137.

Giving a literal reading to the constitutional provision and *Bd. of Trustees, supra,* it follows that any municipal ordinance, such as the one enacted by the city of Twinsburg, which conflicts with R.C. Chapter 143 (now 124) is invalid despite the city's power of local self-government. It is hardly conceivable that a subject could be more closely linked with a civil service employee's general welfare than the right to receive those civil service benefits provided by the Ohio Constitution.

Moreover, even were Section 34, Article II *not* dispositive of the instant

---

[4] The issue of Section 34, Article II of the Ohio Constitution was not specifically raised by the parties.

cause, the city of Twinsburg's ordinance must yield to the statewide concern regarding the civil service system in Ohio.

It is a fundamental principle of Ohio law that a municipality may not, in the regulation of local matters, infringe upon matters of general statewide concern. See, *e.g., Cleveland Elec. Illum. Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125, 44 O.O. 2d 121, 239 N.E. 2d 75; *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363, 20 O.O. 3d 327, 422 N.E. 2d 598; *State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88, 23 O.O. 3d 145, 431 N.E. 2d 311; *State, ex rel. Villari,* v. *Bedford Hts.* (1984), 11 Ohio St. 3d 222, 11 OBR 537, 465 N.E. 2d 64; *Kettering* v. *State Emp. Relations Bd., supra; State Personnel Bd. of Review* v. *Bay Village Civil Service Comm.* (1986), 28 Ohio St. 3d 214, 28 OBR 298, 503 N.E. 2d 518. Further, municipal regulations which have significant extra-territorial effects are matters of statewide concern. *Painesville, supra; Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 66, 73 O.O. 2d 285, 287, 337 N.E. 2d 766, 770; *State, ex rel. Evans,* v. *Moore, supra; Kettering, supra; Bay Village Civil Service Comm., supra.*

Although the statewide-concern doctrine was first enunciated by this court in *Bucyrus* v. *Dept. of Health* (1929), 120 Ohio St. 426, 166 N.E. 370, the concept has more recently been articulated in a number of cases, including *Cleveland Elec. Illum. Co.* v. *Painesville, supra,* at 129, 44 O.O. 2d at 123, 239 N.E. 2d at 78, wherein we stated: "Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest." The statewide-concern doctrine was also

discussed in *Beachwood* v. *Bd. of Elections of Cuyahoga Cty.* (1958), 167 Ohio St. 369, 371, 5 O.O. 2d 6, 7-8, 148 N.E. 2d 921, 923, where it was stated: "To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly." Further, the doctrine was discussed in *Kettering, supra,* at 55, 26 OBR at 47, 496 N.E. 2d at 988: "What the statewide concern doctrine perceives is that a comprehensive statutory plan is, in certain circumstances, necessary to promote the safety and welfare of all the citizens of this state, be they public employees or those whom public employees must serve and protect. As we stated in *State, ex rel. McElroy,* v. *Akron* (1962), 173 Ohio St. 189, 192, 19 O.O. 2d 3, 4, 181 N.E. 2d 26, 28, '[d]ue to our changing society, many things which were once considered a matter of purely local concern and subject strictly to local regulation, if any, have now become a matter of statewide concern, creating the necessity for statewide control.' "

Thus, it can be seen that some matters which were once considered purely local have now become matters of statewide concern necessitating statewide control. The civil service system is obviously of statewide concern and requires statewide control. R.C. Chapter 124 sets forth a comprehensive statutory plan for civil service within this state. Furthermore, Section 10, Article XV of the Ohio Constitution requires the state, counties and cities to administer civil service.

Accordingly, given the comprehensive statutory and constitutional provisions regulating the area, the fact that civil service is of statewide concern cannot honestly be disputed.

Likewise, there is no question that city school districts are encompassed within the civil service system and are thus of statewide concern. Section 10, Article XV of the Ohio Constitution provides:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to · be ascertained, as far as practicable, by competitive examinations. *Laws shall be passed providing for the enforcement of this provision.*" (Emphasis added.)

In *State, ex rel. Cincinnati,* v. *Urner* (1947), 147 Ohio St. 305, 308, 34 O.O. 228, 229, 70 N.E. 2d 881, 882-883, we stated that:

"In 1912, the people wrote into the Constitution a provision declaring the public policy of this state with reference to civil service and requiring that laws shall be passed for the enforcement of that constitutional provision (Section 10, Article XV). Thereafter the General Assembly passed what is commonly known as the Civil Service Code (Sections 486-l*a* to 486-31, both inclusive, General Code) [now R.C. Chapter 124]. All offices and positions of trust or employment in the service of the state, counties, cities and city school districts are embraced within the term 'civil service' (Section 486-l*a*, General Code) [now R.C. 124.01(A)]." See, also, *State, ex rel. Brand,* v. *Eversman* (1951), 155 Ohio St. 383, 386, 44 O.O. 370, 372, 99 N.E. 2d 169, 171, and *State, ex rel. Sigall,* v. *Aetna* (1976), 45 Ohio St. 2d 308, 312, 74 O.O. 2d 471, 473, 345 N.E. 2d 61, 64, wherein this court stated that:

"The last sentence of that constitutional provision [Section 10, Article XV] clearly requires the conclusion that enactment of legislation must precede execution of the constitutional mandate. Stated another way, Section 10, Article XV is not self-executing, but can be implemented through legislation.

"Such legislation exists in Ohio and appears as R.C. Chapter 124. The provisions of R.C. Chapter 124, so far as pertinent to this appeal, are as follows:

"R.C. 124.01, the definitional section of R.C. Chapter 124, provides, in pertinent part:

" '(A) "Civil service" includes all offices and positions of trust or employment in the service of the state and the counties, cities, city health districts, general health districts, and city school districts thereof.' "

R.C. Chapter 124 constitutes the legislation implementing Section 10, Article XV of the Ohio Constitution. That chapter expressly provides that city school districts, including multi-city school districts, are within the definition of civil service. Thus, to say that such chapter does not provide a comprehensive statutory plan necessary to protect the safety and welfare of all citizens of this state defies both logic and this court's prior pronouncements.

Moreover, today's holding substantially frustrates the policy behind our civil service system. *Kettering, supra,* at 55, 26 OBR at 47, 496 N.E. 2d at 988. See *State, ex rel. Sigall,* v. *Aetna, supra,* at 314, 74 O.O. 2d at 474, 345 N.E. 2d at 65, wherein this court stated that "* * * a purpose of the merit system in the civil service is to eradicate the spoils system by protecting an employee who has civil service tenure from being arbitrarily discharged and replaced with a political appointee." See, also, *State, ex rel. Buckman,* v. *Munson* (1943), 141 Ohio St. 319, 25 O.O. 455, 48 N.E. 2d 109, paragraph one of the syllabus:

"The fundamental purpose of civil service laws and rules is to assure appointments and promotions in the public service based upon merit and fitness and to safeguard appointees in the classified service against unjust charges of misconduct or inefficiency and from being unjustly discriminated against for religious or political reasons or affiliations."

Finally, I am in complete agreement with the holding in *State, ex rel. Stough,* v. *Bd. of Edn.* (1977), 50 Ohio St. 2d 47, 4 O.O. 3d 116, 362 N.E. 2d 266. In *Stough,* this court stated that, "[j]urisdiction over city school district employees is granted and directed to be exercised by statute, in accordance with the state's authority over public education under Section 3, Article VI of the Ohio Constitution. *A city charter has no effect upon this statutory grant of jurisdiction."* (Emphasis added.) *Id.* at 49, 4 O.O. 3d at 117, 362 N.E. 2d at 268. Therefore, the city of Twinsburg is powerless to interfere with the state's exercise of civil service jurisdiction over city school district employees.

Accordingly, I believe that Twinsburg's ordinance at best interferes with a statewide concern and at worst contravenes Ohio's Constitution. Therefore, I would affirm the judgment of the court of appeals.

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.