[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Johnson v. Higgins*, Slip Opinion No. 2024-Ohio-5174.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5174

THE STATE EX REL. JOHNSON *v*. HIGGINS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Johnson v. Higgins*, Slip Opinion No. 2024-Ohio-5174.]

*Quo warranto—Relator cannot establish that he is entitled to position of fire chief or that respondent is unlawfully holding the position, because relator was not the candidate who received the highest civil-service-examination grade for the position and his name did not appear on an eligible-candidate list for promotion—Writ denied.*

(No. 2023-1332—Submitted September 17, 2024—Decided October 31, 2024.)

IN QUO WARRANTO.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.

**Per Curiam.**

{¶ 1} Relator, Patrick Johnson, filed an original action in quo warranto against respondent, Mark Higgins, in this court. Higgins is currently serving as chief of the fire department of the City of Brook Park, a position to which Johnson claims legal entitlement. Johnson seeks a writ ousting Higgins from the position and declaring that Johnson is entitled to the position. We deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Background of Brook Park's fire-chief vacancy*

{¶ 2} The City of Brook Park has a fire department led by a chief. *Brook Park City Charter* § 8.04. The city's charter provides that the "Chief of the Department of Fire shall be selected by competitive examination" and that the "[e]ligibility list for the Chief's examination shall be determined by the Civil Service Commission." *Id.* Brook Park's civil-service commission has adopted rules governing examinations and lists of eligible candidates, which generally require that appointments be made from eligible-candidate lists. Brook Park Civil Service Commission Rule VII. In addition, the civil-service rules provide that a provisional appointment may be made for "urgent reasons" if no eligible-candidate list exists. *Id.* at § VII(6).[1]

{¶ 3} In January 2022, the chief of Brook Park's fire department, Thomas Maund, announced his intent to retire in August 2022. Both Johnson and Higgins were employed by the fire department at that time—Johnson as assistant fire chief and Higgins as a lieutenant.

{¶ 4} In June 2022, the city announced a civil-service examination for the fire-chief position. Fifty percent of the total score would be from a written exam and 50 percent from an assessment-center test. The firefighters' union filed a

---

1. Although the Civil Service Commission Rules refer to such appointments as "provisional," the parties refer to them as "temporary" or "interim" appointments; this opinion generally follows the practice of the parties.

grievance arguing that scoring from an assessment-center test was not permitted under the union's collective-bargaining agreement. The mayor denied the grievance, and the union filed suit in the Cuyahoga County Court of Common Pleas, seeking to prevent the city from hiring a fire chief while the union pursued arbitration. In August, the court granted an injunction enjoining "the City from using the results of the Assessment Center to appoint the new Fire Chief until after the results of the Arbitration," which would "determine whether the Assessment Center [exam] will be pass/fail or used in the manner the City [had] propose[d]."

{¶ 5} On August 17, the city conducted a written civil-service promotional exam for fire chief. Out of three applicants, Higgins scored the highest and Johnson scored the lowest. Because of the court injunction, no eligible-candidate list was created at that time.

{¶ 6} On January 20, 2023, the civil-service commission conducted an assessment-center promotional exam. On February 13, the arbitrator of the union's grievance determined that the assessment-center tests could be used only on a pass/fail basis. In March and April, Johnson and Higgins took additional testing for advancement to fire chief. On May 23, after the completion of all exams, the civil-service commission issued an eligible-candidate list. Higgins was the only name on the list.

*B. Johnson's September 2022 appointment*

{¶ 7} Meanwhile, on September 7, 2022, while the litigation and examinations were ongoing, the mayor swore in Johnson as fire chief. The core disputed issue in this case is whether Johnson was appointed as the permanent chief or only a temporary or interim chief.

{¶ 8} The mayor's nomination form stated that he was nominating Johnson as a "temporary appointment" under the civil-service rules providing for provisional appointments. Johnson's classification and salary-action form provided that his salary was being increased due to an appointment as "Interim

3

chief." Johnson's oath of office, however, stated that he swore to "discharge the duties of Fire Chief of the City of Brook Park" and did not state that he was being appointed to a temporary or interim position. At a civil-service hearing, the mayor testified that a draft of the oath had contained a reference to the appointment being temporary or interim but that for unspecified reasons, the secretary of the civil-service commission had advised that the reference be removed.

{¶ 9} Johnson ran the fire department for approximately six months. His email signature block stated "Chief," and he obtained "Chief" badges from the city. In almost all the correspondence produced as evidence, city employees referred to him as "Chief" without qualifying his position as interim or temporary, although the civil-service commission referred to him as "Interim Chief" on at least one occasion.

{¶ 10} On March 7, 2023—six months after Johnson's appointment and before the release of an eligible-candidate list—the mayor nominated Higgins as chief, and Higgins was sworn in as chief on March 10. The parties dispute whether Higgins's March appointment was permanent or temporary. The procedure was similar to that of Johnson's appointment; the mayor nominated him as temporary chief, but Higgins's oath of office made no mention of a temporary or interim appointment. Johnson states that he never received any formal notification from the city that he was being removed as chief, and no such document is in the record. Johnson filed an appeal regarding his reduction of position and pay with the civil-service commission, which, after an evidentiary hearing, dismissed the appeal.

{¶ 11} On July 7, after the release of an eligible-candidate list containing only Higgins's name, Higgins was sworn in as permanent chief. He continues to serve as Brook Park's fire chief.

### C. Johnson's quo warranto action

{¶ 12} On October 20, 2023, Johnson filed this original action in quo warranto in this court. He requests a writ ousting Higgins from the position of fire

chief and declaring that he is entitled to the position. Higgins was still in his probationary period as chief when Johnson filed this action. Higgins filed a motion to dismiss, which we denied. 2024-Ohio-1307. In addition, the firefighters' union filed a motion to intervene, which we denied as moot. *Id.* We issued an alternative writ, ordering the submission of evidence and briefs. *Id.*

## II. ANALYSIS

### A. *Motion for oral argument*

{¶ 13} Johnson has moved for oral argument, which Higgins opposes. In an original action, we may order oral argument sua sponte or upon a party's request. S.Ct.Prac.R. 17.02(A). When deciding whether to hold oral argument in an original action, we consider "'whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals.'" *State ex rel. Lorain v. Stewart*, 2008-Ohio-4062, ¶ 17, quoting *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 2006-Ohio-5339, ¶ 15. This case does not involve any of these factors, and we therefore deny the motion.

### B. *Motion to strike*

{¶ 14} Johnson has also filed a motion to strike numerous exhibits Higgins submitted as evidence. He also asks us to strike portions of one of the affidavits Higgins submitted as evidence. We deny most of the relief requested in the motion but strike two exhibits—Exhibits D and E—that Higgins agrees should be struck.

{¶ 15} Higgins submitted as evidence affidavits from himself, the mayor of Brook Park, and the secretary of Brook Park's civil-service commission. The affidavits all state that they are based on the affiant's personal knowledge.

{¶ 16} Higgins also submitted 25 other documents as exhibits, including emails, city correspondence, exam notifications, court filings, and civil-service-commission records. When referring to one of the exhibits, the affidavits generally describe the document or an action the affiant took related to the document and then state, "See Higgins Ex. __." Johnson asks us to strike 16 of the documents, arguing

that they were not properly authenticated pursuant to Evid.R. 902(4) (relating to self-authentication of public records). All but two of the documents—Exhibits D and E—Johnson seeks to strike were referred to in one of the three affidavits that Higgins submitted. Johnson does not argue that any of the documents are actually inauthentic or otherwise not what they purport to be. Higgins agrees that Exhibits D and E were not properly authenticated because they are not discussed in the affidavits, but he argues that the remainder are properly authenticated.

**{¶ 17}** We may strike documents filed in original actions that are not properly authenticated. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 2007-Ohio-3831, ¶ 37-38; *State ex rel. Taft v. Franklin Cty. Court of Common Pleas*, 63 Ohio St.3d 190, 192-193 (1992). "The determination of a motion to strike is vested within the broad discretion of the court." *State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 26.

**{¶ 18}** Johnson argues that the 16 documents he challenges were not properly authenticated under Evid.R. 902(4), which requires that self-authenticating official public records contain a certification from the proper custodian. Johnson's argument fails because Evid.R. 902(4) applies to *self-authenticating* records, *see* Evid.R. 902 ("Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following . . ."), but Higgins does not offer these exhibits as self-authenticating records. Rather, each affiant swore that he or she had personal knowledge of the facts stated in his or her affidavit, referred to the document, and then described either the document or an action he or she took related to the document. The affiants thus have properly authenticated the documents. *See* Evid.R. 901(A) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

{¶ 19} Johnson also asks that we strike paragraphs 4 through 10 and 15 through 23 of Amanda Konery's affidavit. Konery serves as the secretary of Brook Park's civil-service commission. But she did not start in her position until March 13, 2023, and portions of her affidavit aver to actions the civil-service commission took prior to her service as secretary. Johnson argues that Konery did not have personal knowledge of these events. In response, Higgins notes that Johnson has continued to dispute his removal as fire chief, including at a civil-service-commission hearing, and that Konery has been involved with these proceedings. Because Konery serves as the secretary of the civil-service commission and participated in events related to Johnson's civil-service-commission appeal, we conclude that Konery had sufficient personal knowledge to attest to these actions, and we therefore deny Johnson's request that we strike paragraphs 4 through 10 and 15 through 23 of her affidavit.

{¶ 20} Finally, Johnson offers an additional reason why we should strike paragraph 16 of Konery's affidavit, which states, "Relator was sworn in as temporary Fire Chief on September 7, 2022." Johnson argues that Konery's statement that Higgins was sworn in as "temporary" chief constitutes an improper legal conclusion not appropriate for a lay witness. *See* Evid.R. 701. Konery's statement is not a legal conclusion; it is her description of what she believed occurred based on her personal knowledge and perception. We can make our own legal conclusion regarding whether Johnson was appointed temporary or permanent chief without striking the statement.

{¶ 21} In sum, we grant Johnson's motion to strike in part and deny it in part; we strike Exhibits D and E and deny the remaining requests.

### C. Writ of quo warranto

{¶ 22} To be entitled to a writ of quo warranto, a relator must establish (1) that the respondent is unlawfully holding an office, (2) that the relator is entitled to the office, and (3) that the relator lacks an adequate remedy at law. *State ex rel.*

*Zeigler v. Zumbar*, 2011-Ohio-2939, ¶ 17, 23. As a general matter, an appointed city fire-chief position is a public office for which a writ of quo warranto may issue. *See, e.g.*, *State ex rel. Newell v.* Jackson, 2008-Ohio-1965, ¶ 8; *State ex rel. Atty. Gen. v. Jennings*, 57 Ohio St. 415, 424 (1898) (for purposes of quo warranto "[t]he chief of a fire department performs such duties as make him an officer"). Here, Higgins does not argue that Johnson has or had an adequate remedy at law.

{¶ 23} Regarding the second requirement for issuance of a writ of quo warranto, Johnson cannot establish that he is entitled to the position of fire chief, because he was not the candidate who received the highest civil-service-examination grade for the position and his name did not appear on an eligible-candidate list. Brook Park's city charter provides that the "Chief of the Department of Fire shall be selected by competitive examination" and that the "[e]ligibility list for the Chief's examination shall be determined by the Civil Service Commission." Brook Park City Charter § 8.04; *see also* Ohio Const., art XV, ¶ 10 ("Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations."). Absent "urgent reasons" for a temporary appointment, appointments may be made only from eligible-candidate lists, which are determined by examinations. Brook Park Civil Service Commission Rules VI and VII.

{¶ 24} As a general matter, because Brook Park has adopted a city charter, the charter provisions related to the civil service will control over related statutory provisions. *See generally Ohio Assn. of Pub. School Emps., Chapter No. 471 v. Twinsburg*, 36 Ohio St.3d 180, 182-183 (1988) ("It is well-settled in Ohio that regulation of city civil service is within the powers of local self-government."). But R.C. 124.48, a statutory provision related to fire-department vacancies, also requires competitive examinations for promoted-rank fire-department positions. Interpreting R.C. 124.48, we have held that "[w]hen a vacancy occurs in a

promoted-rank position in a fire department and no list of eligible candidates for that position exists, the position must be filled through the competitive promotional-examination process." *State ex rel. Internatl. Assn. of Fire Fighters, Local 1536, AFL-CIO v. Sakacs*, 2023-Ohio-2976, ¶ 1. In another quo warranto case, we denied a relator's claim that she was entitled to the position of fire chief because "[s]he did not pass the promotional examination, and there was no list naming eligible candidates." *Newell* at ¶ 7. A similar analysis applies to Brook Park's charter, which also requires that the fire chief be appointed from eligible-candidate lists determined by competitive examination.

{¶ 25} Thus, a necessary qualification for permanent fire chief in Brook Park is selection through a civil-service examination as an eligible candidate. Here, Johnson's name never appeared on an eligible-candidate list for promotion to fire chief, and Higgins scored higher than Johnson on the promotional exam. This alone defeats Johnson's claim that he is entitled to the position of fire chief. *See Newell*, 2008-Ohio-1965, at ¶ 7.

{¶ 26} Johnson argues, however, that regardless of whether he was an eligible candidate, the city actually did appoint him permanent fire chief and he therefore may not be removed except for certain for-cause reasons. *See* Brook Park Civil Service Rule IX (providing that classified employees may be removed only for specified for-cause reasons). Given that a permanent fire chief may be appointed only from a list of eligible candidates—which here did not contain Johnson's name—it is questionable whether an invalid appointment as permanent fire chief would entitle him to a writ of quo warranto declaring that he is entitled to the position of fire chief. Johnson would still not have the superior right to the position. But regardless, the evidence does not support Johnson's assertion that he was appointed permanent fire chief.

{¶ 27} Brook Park's civil-service-commission rules provide that "[w]henever there are urgent reasons for filling a vacancy in any position in the

classified service and there is no Eligible List available for such position, the appointing authority may nominate a person to fill this position provisionally until an Eligible List is created." Brook Park Civil Service Rules VII(6); *see also* R.C. 124.30(A)(1) (providing similarly for temporary civil-service appointments). Here, Brook Park's fire chief retired. The firefighters' union was in litigation regarding its fire-chief examination process and had obtained a preliminary injunction prohibiting the city from using scores from assessment-center tests to appoint a new fire chief until the conclusion of arbitration. Because the test scoring was on hold, the city could not appoint a permanent fire chief when the previous chief retired— and would not be able to until the litigation concluded.

**{¶ 28}** Under these circumstances, the mayor nominated Johnson as temporary fire chief, effective September 7, 2022. The mayor's nomination form stated that under "Civil Service Commission, Rule VII," he was nominating Johnson as a "temporary appointment." Johnson's classification and salary-action form provided that his salary was being increased due to his appointment as "Interim chief." After six months, the mayor appointed another firefighter— Higgins—as temporary chief. This evidence and sequence of events show that Johnson's appointment was temporary.

**{¶ 29}** Johnson asserts several reasons why his appointment was not temporary. First, Johnson argues that the city did not have an "urgent reason" to appoint a temporary fire chief, as is required by Brook Park's civil-service rules for a temporary appointment, and that his appointment therefore should be considered a permanent appointment. Even assuming the absence of an urgent reason for the city to appoint a temporary chief, it would not be clear that Johnson was appointed permanent chief (or that he is currently entitled to that position); rather, under this premise, he arguably never lawfully held the position of temporary chief. But regardless, when the former chief retired in August 2022, the city did have an urgent need for a temporary appointment; it could not appoint a permanent chief until the

arbitrator issued a decision in the union's arbitration, which ended up taking more than six months.

{¶ 30} Johnson points out that the mayor testified before the civil-service commission that he had believed that there was an "important" but not an "urgent" need for a temporary appointment. Johnson then cites dictionary definitions of "important" and "urgent" and argues that the words have different meanings. But the mayor's testimony was that of a layperson, and we do not view his testimony as evidence indicating that the legal requirements for a temporary appointment had not been met. Moreover, even under Johnson's preferred definition of "urgent"—as "calling for immediate attention"—the absence of a fire chief for several months called for the immediate attention of the city.

{¶ 31} Second, Johnson argues that his oath of office stated that he was swearing to "discharge the duties of the Fire Chief of the City of Brook Park" and that the oath did not contain any indication that he was being appointed to a temporary or interim position. The mayor testified that a draft of the oath had contained a reference to a temporary or interim appointment but that for unspecified reasons, the secretary of the civil-service commission advised that the reference be removed. Johnson, however, presents no authority holding that the exact wording of an oath of office controls what position the oath-taker is being appointed to, particularly when that wording contradicts other appointment-related documents.

{¶ 32} Third, Johnson argues that during his service as fire chief, city employees routinely addressed correspondence to him as "Chief" and did not include any indication that he was a temporary or interim chief. Johnson notes that his email signature block stated that he was "Chief" and that he obtained "Chief" badges from the city. But the more informal of these references are likely terms of respect rather than formal recognition, similar to addressing a lieutenant colonel as "Colonel" or an associate professor as "Professor." As the mayor testified at the civil-service-commission hearing, he and other city employees routinely addressed

the assistant fire chief as "Chief." The more formal correspondence may support the argument that Johnson was appointed permanent chief, but in our opinion, it does not outweigh the evidence indicating otherwise.

{¶ 33} In sum, the evidence shows that Johnson was appointed temporary, not permanent, chief.

{¶ 34} Johnson has not shown that he is entitled to the office of chief of the Brook Park Fire Department. To be entitled to that office, a person must have been certified as an eligible candidate to the position by Brook Park's civil-service commission; Johnson never was. In addition, the evidence shows that Johnson's appointment was temporary, not permanent. Therefore, we deny Johnson's requested writ ordering his appointment as fire chief.

{¶ 35} Finally, although Johnson has not established his entitlement to the position of fire chief, we could still issue a writ ousting Higgins if we found that Higgins was not lawfully holding the office. *See State ex rel. Myers v. Brown*, 2000-Ohio-478, ¶ 13; *see also Newell* at ¶ 8. We do not do so. Higgins scored the highest on the civil-service exam and was the only candidate on the final eligible-candidate list. Johnson has not shown that Higgins is unlawfully holding the position.

### III. CONCLUSION

{¶ 36} Johnson has not shown that he is entitled to the office of Brook Park fire chief. Nor has he shown that Higgins is unlawfully holding the position. Therefore, we deny Johnson's requested writ of quo warranto. We also deny his motion for oral argument and grant in part and deny in part his motion to strike, striking only Higgins's Exhibits D and E.

Writ denied.

_____

Harvey + Abens Co., L.P.A., Matthew B. Abens, and David L. Harvey III, for relator.

Zashin & Rich Co., L.P.A., Jonathan J. Downes, and Scott H. DeHart, for respondent.

————————————