ATWOOD RESOURCES, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Atwood Resources, Inc. *v.* Pub. Util. Comm. (1989), 43 Ohio St. 3d 96.]

(No. 87-1727—Submitted February 21, 1989—Decided May 24, 1989.)

*Daniel T. Lehigh* and *Elizabeth Lehigh,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Anne L. Hammerstein,* for appellee.

*Thomas E. Morgan, Roger C. Post* and *Kenneth W. Christman,* for intervening appellee.

*Per Curiam.* Appellant presents eight propositions of law. Two relate to a matter not properly before us, and

six are without merit. Therefore, we affirm the order of the commission.

In its first two propositions of law, Atwood essentially argues that Columbia's complaint fails to satisfy the requirements of R.C. 4905.26, which provides in part:

"Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, or exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing * * *."

Atwood first argues that R.C. 4905.26 is not applicable because it requires complaints to be brought against a public utility. Appellant reasons that since it does not fall within this class, the commission is without subject-matter jurisdiction. This argument has two shortcomings: As found below, Atwood is, in fact, a public utility; and, the commission has the authority to make that determination.

Second, Atwood argues that the commission has no authority to consider complaints between public utilities. Appellant implies that Columbia could only maintain an action against it if R.C. 4905.26 included the italicized words in the following phrase: "* * * upon complaint of a public utility *against a public utility* as to any matter affecting its own product or service * * *." The activities of one public utility may be the "matter affecting * * * [a complaining utility's] own product or service." Thus, Atwood's construction is too narrow, strips the statute of its usefulness (see *Ohio Utilities Co.* v. *Pub. Util. Comm.* [1979], 58 Ohio St. 2d 153, 157, 12 O.O. 3d 167, 169, 389 N.E. 2d 483, 486), and is otherwise at odds with our decisions that R.C. 4905.26 is broad in scope. See *Western Reserve Transit Auth.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 16, 68 O.O. 2d 9, 313 N.E. 2d 811; and *Allnet Communications Services, Inc.* v. *Pub. Util. Comm.* (1987), 32 Ohio St. 3d 115, 512 N.E. 2d 350. Accordingly, we hold that R.C. 4905.26 contemplates actions by one public utility against another public utility.

Atwood next challenges Columbia's standing on the basis that it suffered no actual damages because Simonds and Kurz-Kasch allegedly paid the minimum charge obligations under their agreements with Columbia. Whether these consumers fulfilled their contractual requirements, if any, is irrelevant. Here, the alleged damage pertains to economic loss to a regulated public utility and its consumers from sales displaced as a result of a natural gas producer's unregulated activities. This type of direct effect on a public utility's sales in a given area is sufficient to confer appellate standing (see *East Ohio Gas Co.* v. *Pub. Util. Comm.* [1988], 39 Ohio St. 3d 295, 297-298, 530 N.E. 2d 875, 877-878);

and, for purposes of standing before the commission, plainly satisfies the requirement of R.C. 4905.26 that the complained-of matter be one affecting a public utility's own product or service.

Last, appellant argues that economic injury resulting from lawful competition cannot, in and of itself, confer standing on a damaged business to question the legality of its competitors' operations unless the underlying statute or regulatory scheme is intended to protect the interest of a competitor. See *Hardin* v. *Kentucky Utilities Co.* (1968), 390 U.S. 1. Relying primarily on our decision in *Dayton Communications Corp.* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 302, 18 O.O. 3d 478, 414 N.E. 2d 1051, Atwood concludes that R.C. Title 49 does not protect Columbia's competitive interests. Neither *Hardin* nor *Dayton Communications Corp.* is instructive here.

In *Hardin, supra,* the damaged private utility had no explicit statutory provision on which to rely for purposes of standing. Therefore, it was necessary for the United States Supreme Court to infer, from the area limitation contained in Section 15d of the Tennessee Valley Authority Act, that respondent came within the class the legislation was designed to protect. Here, it is unnecessary to look beyond the face of R.C. 4905.26. The General Assembly has specifically defined the class to be protected as public utilities whose own product or service is affected by any matter. Columbia is a member of the designated class.

In *Dayton Communications Corp., supra,* we upheld the commission's refusal to consider the claims of a private telephone system supplier. We reasoned that under the terms set forth in R.C. 4905.26, the commission lacked jurisdiction over the prices charged by a public utility for the outright sale of equipment, including in-place cable and wires. The court has also recognized that the commission has limited authority to entertain allegations of anti-competitive practices where the pricing of a competitive product or service is involved. See *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 23 O.O. 3d 361, 433 N.E. 2d 923.

But, where a complaint alleges that a public utility is charging premium access rates while providing inferior access services, we have held that it was error for the commission to dismiss the action, regardless that it was brought by a competitor. See *Allnet Communications Services, Inc.* v. *Pub. Util. Comm.* (1988), 38 Ohio St. 3d 195, 527 N.E. 2d 840.

Here, as in *Allnet, supra,* the complained-of conduct relates to a matter that is properly subject to regulatory control through the complaint proceeding. Whether a natural gas producer's activities constitute those of a public utility, whether it has complied with the applicable laws, and whether it should be subject to regulation, are questions that the commission has authority to determine under R.C. 4905.04, 4905.05 and 4905.06.

Columbia having alleged a matter affecting its own product or service, and having set forth reasonable grounds as required by R.C. 4905.26, we conclude that Columbia has standing.

In its third proposition of law, Atwood argues that the contracts with Simonds and Kurz-Kasch are private in nature and, therefore, beyond the jurisdiction of the commission. In support of this argument, it cites *Kemme* v. *Cincinnati Gas & Elec. Co.* (Dec. 22, 1982), PUCO No. 82-1362-GA-CSS. This case is readily distinguished.

In *Kemme,* a complaint was brought by two individuals alleging

that they had been charged an unreasonable amount by a public utility to repair a leak in their gas service piping. In dismissing the action, the commission explained: "* * * The repair or replacement of the gas service piping can be done by either CG&E or another plumbing contractor, at the option of the customer. This activity is not a monopolistic service which comes under the jurisdiction or control of this Commission."

Here, the activities of Atwood do come within the commission's jurisdiction. Moreover, because the provisions of the state and federal Constitutions, prohibiting laws impairing the obligation of contracts, do not affect the police power, Atwood's "private endeavors" are subject to regulation. See, *e.g., Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, paragraph ten of the syllabus; *Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347, 37 O.O. 39, 78 N.E. 2d 890, paragraphs three and four of the syllabus.

In its fourth proposition of law appellant contends that the commission must identify a real and substantial relation to the public health, safety, morals or general welfare before it can subordinate a private contract to regulation. However, this is not a question that is committed to the commission.

As we stated in *Benjamin, supra,* at paragraph six of the syllabus: "Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them."

Nothing on the record before us suggests that it is *unduly* burdensome, or otherwise clearly erroneous, for the legislature to subject to regulation producers that are in the business of supplying natural gas to consumers and are thus "public utilities," as defined by law.

Atwood argues through its fifth proposition of law that it is an unconstitutional impairment of the obligation of contracts, and through its sixth proposition of law that it is an unreasonable and an arbitrary exercise of the police power, for the commission to require that exempt producers notify the commission so that it may dispute whether exempt status is within the public interest. These propositions apparently relate to certain notification procedures approved by the commission in an earlier proceeding, *In re Application of East Ohio Gas Co. Requesting Uniform Public Utility Treatment of Sales of Natural Gas to Customers* (Oct. 9, 1984), PUCO No. 83-1076-GA-UNC.

No reference to this notification procedure, or to PUCO No. 83-1076-GA-UNC, appears in Atwood's application for a rehearing. Having failed to meet the requirements of R.C. 4903.10,[2] we conclude that the matter is not properly before us. See *Cincin-*

---

[2] R.C. 4903.10 provides, in part, that:

"After any order has been made by the public utilities commission, any party who has entered an appearance in person or by counsel in the proceeding may apply for a rehearing in respect to any matters determined in said proceeding.

"* * *

"Such application shall be in writing and shall set forth specifically the ground or

nati Bell Tel. Co. v. Pub. Util. Comm. (1984), 12 Ohio St. 3d 280, 290, 12 OBR 356, 365, 466 N.E. 2d 848, 857, appeal dismissed (1986), 476 U.S. 1166; Akron v. Pub. Util. Comm. (1978), 55 Ohio St. 2d 155, 161-162, 9 O.O. 3d 122, 125-126, 378 N.E. 2d 480, 485; Cincinnati v. Pub. Util. Comm. (1949), 151 Ohio St. 353, 39 O.O. 188, 86 N.E. 2d 10, paragraph seventeen of the syllabus; and Travis v. Pub. Util. Comm. (1931), 123 Ohio St. 355, 9 Ohio Law Abs. 443, 175 N.E. 586, paragraph six of the syllabus.

Additionally, we note that merely because Atwood has elevated a question to constitutional proportions, it does not necessarily follow that the matter may be raised initially in this court. Where, as here, extrinsic facts are required to properly resolve the issue, error must be specified at the first available opportunity. See Cleveland Gear Co. v. Limbach (1988), 35 Ohio St. 3d 229, 520 N.E. 2d 188.

Through its seventh proposition of law, Atwood argues that the character of its business is not that of a public utility. We disagree.

In 1986, R.C. 4905.02 provided, in part, that "[a]s used in Chapter 4905. of the Revised Code, 'public utility' includes every corporation, company, copartnership, person, or association, their lessees, trustees, or receivers, defined in section 4905.03 of the Revised Code * * *." (138 Ohio Laws, Part I, 1441, 1443.) R.C. 4905.03 provided, in part, that "[a]s used in Chapter 4905. of the Revised Code: (A) Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated,

is: * * * (6) A natural gas company, when engaged in the business of supplying natural gas for lighting, power, or heating purposes to consumers within this state * * *." (138 Ohio Laws, Part I, 1441, 1443-1444.)

Further, in 1941, the legislature amended G.C. 614-2, now R.C. 4905.03 (A)(6), to include the language: "* * * The public utilities commission of Ohio, upon application made to it, * * * [may] relieve any producer of natural gas, hereinbefore defined as a gas company or a natural gas company, of compliance with the obligations imposed by this chapter, * * * so long as such producer does not engage in the distribution of natural gas to consumers." (119 Ohio Laws 83, 85.)

The uncontroverted facts establish that Atwood directly supplied Simonds and Kurz-Kasch with substantial volumes of natural gas monthly over an extended period of time. As an example, Columbia points to one approximate six-month period in which appellant billed these end-users for in excess of 23,000 Mcf of natural gas. Given the sizeable and recurring nature of these transactions, we conclude, as did the commission, that under any ordinary definition Atwood is in the business of supplying natural gas to consumers.

Even though its activities place it squarely within the statutory definition of a "natural gas company," appellant contends that is is not affected with a public interest and, therefore, is not a public utility. To be affected with a public interest, appellant reasons that it must serve a substantial enough part of the public to be of public concern. This is simply another way of saying that it is not "in the business"

---

grounds on which the applicant considers said order to be unreasonable or unlawful. No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in said application." (Emphasis added.)

of supplying natural gas to consumers, a matter that we have already disposed of.

Appellant also argues that there must be a voluntary dedication, or some holding out, to serve the public generally before it can be affected with a public interest. "* * * Yet it is not a controlling factor that the corporation supplying service does not hold itself out to serve the public generally." *Industrial Gas Co.* v. *Pub. Util. Comm.* (1939), 135 Ohio St. 408, 413, 14 O.O. 290, 292, 21 N.E. 2d 166, 168. See, also, *Nebbia* v. *New York* (1934), 291 U.S. 502, 533-536, in which the United States Supreme Court explained that:

"The true interpretation of the court's language is claimed to be that only property voluntarily devoted to a known public use is subject to regulation as to rates. But obviously Munn and Scott had not voluntarily dedicated their business to a public use. They intended only to conduct it as private citizens, and they insisted that they had done nothing which gave the public an interest in their transactions or conferred any right of regulation. The statement that one has dedicated his property to a public use is, therefore, merely another way of saying that if one embarks in a business which public interest demands shall be regulated, he must know regulation will ensue.

"* * *

"* * * The phrase 'affected with a public interest' can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good.* * *"[3]

The General Assembly has determined that "producers," defined as a gas or a natural gas company under R.C. 4905.03(A)(6), that are engaged in the distribution of natural gas to consumers should be subject to regulation. By embarking in this business, Atwood should have known that regulation would ensue. We find the remainder of appellant's arguments set forth in this proposition of law to be similarly without merit.

Through its final proposition of law, Atwood contends that the commission failed to consider and to address the various criteria that are set forth in *Industrial Gas, supra*. However, from a review of the order below, it is apparent that the commission did take these guidelines under consideration and did take into account the facts peculiar to appellant. In no instance is the determination of the commission manifestly against the weight of the evidence or so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty. See, *e.g., Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104, 12 O.O. 3d 112, 113, 388 N.E. 2d 1237, 1238.

We conclude that Atwood is a "natural gas company" and a "public utility" within the meaning of R.C. 4905.03(A)(6) and 4905.02 and affirm the order of the commission.

*Order affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

---

[3] For a discussion of the reasoning behind regulation of the natural gas industry, see *Orndoff* v. *Pub. Util. Comm.* (1939), 135 Ohio St. 438, 441, 14 O.O. 326, 328, 21 N.E. 2d 334, 335.