[Cite as *Hendy v. Ohio Civ. Rights Comm.*, 2023-Ohio-4835.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| CARY V. HENDY | | C.A. No.   30398 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| OHIO CIVIL RIGHTS COMMISSION | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.   2017-10-4426 |

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

SUTTON, Presiding Judge.

**{¶1}** Plaintiff-Appellant Cary Hendy appeals the judgment of the Summit County Court of Common Pleas affirming an order of Defendant-Appellee Ohio Civil Rights Commission ("OCRC"). This Court affirms.

I.

**{¶2}** Fair Housing Contact Service ("FHCS") is an organization dedicated to ensuring non-discrimination and equal housing opportunities in Ohio. In 2015, FHCS conducted testing, and as a result of that testing, filed a charge of discrimination against Mr. Hendy with the OCRC. In that charge, FHCS alleged Mr. Hendy attempted to dissuade a fair housing tester from renting housing and accommodations due to the racial composition of a neighborhood and also alleged Mr. Hendy attempted to charge a pet fee for a service animal.

{¶3} The OCRC investigated the charge and found that it was probable that Mr. Hendy engaged in unlawful discriminatory practices in violation of R.C. 4112.02(H)(4) and (19). Conciliation between the OCRC and Mr. Hendy was attempted but failed.

{¶4} On July 16, 2014, a hearing was held before the chief administrative law judge for the OCRC. After that hearing, on July 26, 2017, the administrative law judge issued a report and recommendation that found Mr. Hendy violated R.C. 4112.02(H).

{¶5} On September 28, 2017, the OCRC adopted the administrative law judge's report and issued a Cease and Desist Order, ordering Mr. Hendy to cease and desist from all discriminatory practices that violated R.C. 4112. The OCRC also ordered Mr. Hendy to pay $10,713.00 in actual damages to FHCS, $5,000.00 in punitive damages, and $8,687.50 in attorney fees to the Ohio Attorney General. Additionally, the OCRC ordered Mr. Hendy to receive training within six months on Ohio's anti-discrimination fair housing laws and submit a letter of training certification to the OCRC.

{¶6} In response, Mr. Hendy filed a complaint for judicial review in the Summit County Court of Common Pleas. Mr. Hendy's complaint sought review of the OCRC's order pursuant to R.C. 4112.06. Mr. Hendy alleged the OCRC violated the law by failing to complete a preliminary investigation and take action within one hundred days after the filing of the charge in violation of R.C. 4112.05(B)(3)(a). The preliminary investigation in Mr. Hendy's case lasted about six months and no conciliation was proposed until after nine months had elapsed. As a result of that delay, Mr. Hendy requested that the trial court set aside the OCRC's order, award him damages, and/or set the matter for a hearing or jury trial.

{¶7} The transcript of proceedings before the OCRC was filed with the trial court on January 12, 2018, and the trial court set forth a briefing schedule for the parties. On February 12,

2018, Mr. Hendy filed his brief with the trial court. In his brief, Mr. Hendy reiterated his argument that OCRC failed to take action within one hundred days in violation of R.C. 4112.05(B)(3)(a). He also argued the OCRC's failure to follow this procedural rule amounted to an equal protection violation. Lastly, Mr. Hendy asserted the OCRC's findings could not be supported by reliable, probative, and substantial evidence in the record because the OCRC failed to consider Mr. Hendy's objections or fully investigate Mr. Hendy's side of the case.

{¶8} On February 26, 2018, OCRC responded to Mr. Hendy's brief, arguing its decision was supported by reliable, probative and substantive evidence. Specifically, the OCRC argued Mr. Hendy made favorable comments to an African American tester while dissuading a Caucasian tester from renting due to the racial composition of the neighborhood. Further, the OCRC argued Mr. Hendy required a pet fee for a disabled person's service animal in violation of Ohio Administrative Code 4112-5-7(C). The OCRC asserted this constituted direct evidence of discrimination, thereby shifting the burden of proof to Mr. Hendy to show that his actions were not discriminatory. The OCRC also pointed to the fact that Mr. Hendy did not deny these specific actions.

{¶9} Additionally, the OCRC argued that with respect to the issue pertaining to the timeliness of its preliminary investigation, Mr. Hendy waived his argument pursuant to R.C. 4112.06(C), and that an investigation did not need to be completed within the statutory timeline if it was impracticable to do so. The OCRC also pointed to evidence in the record in the form of a letter sent to the parties advising them that it was unable to complete the preliminary investigation within the specified time period. Additionally, the OCRC argued that the trial court could only review the decision of the OCRC and not the manner in which the OCRC conducted its investigation.

{**¶10**}  On March 7, 2018, Mr. Hendy moved to amend his petition.  On April 19, 2018, the trial court denied his motion to amend and dismissed the appeal for lack of subject matter jurisdiction because Mr. Hendy did not name FHCS as a party.  Mr. Hendy timely appealed that decision to this Court.

{**¶11**}  In *Hendy v. Ohio Civil Rights Commission*, 9th Dist. Summit No. 29043, 2020-Ohio-5415, this Court found that Mr. Hendy's failure to formally name FHCS as a party did not deprive the trial court of jurisdiction.  *See Hendy* at ¶ 14.  Rather, Mr. Hendy was only required to accomplish service on all parties who appeared before the OCRC and on the OCRC through the Clerk of Courts within one year of the date of filing the petition.  *Id*.  Because the trial court dismissed the action prior to the expiration of the one-year statute of limitation for serving FHCS, the dismissal was premature.  *Id*.  This Court reversed and remanded the case back to the trial court. *Id*. At ¶ 17.

{**¶12**}  On remand, the trial court set a supplemental briefing schedule, allowing: (1) Mr. Hendy to update his requests and file any supplemental briefing; (2) the defendants to file responses; and (3) Mr. Hendy to file a reply.  Despite a limited briefing schedule, the parties filed twenty-three pleadings, motions, and/or responses in addition to the briefs that were filed prior to the appeal.  The trial court struck several of the pleadings but did consider some of the pleadings submitted.   In his supplemental pleadings and motions, Mr. Hendy attempted to submit a "complaint in countersuit" against various new defendants for allegedly committing crimes against him.  He also further challenged the constitutionality of R.C. 4112.04 and continued to argue that the OCRC failed to complete a proper investigation.

{¶13} In response, OCRC argued that the trial court could not consider the additional evidence submitted by Mr. Hendy and that Mr. Hendy had waived his constitutional arguments because he failed to raise them before the administrative body.

{¶14} On August 1, 2022, the trial court issued an order overruling Mr. Hendy's assignments of error and affirming the OCRC decision. Mr. Hendy now appeals from that order, assigning four errors for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

**THE LOWER COURT OF REVIEW COMMITS [AN] ERROR [AT] LAW IN ITS ORDER DATED 8/1/22, WHEN ON PG 9, IT DECIDES [AND] THEN WRITES "IN OTHER WORDS, THE SCOPE OF THIS COURT'S REVIEW IS TO REVIEW THE OCRC'S FINAL ORDER."**

{¶15} In his first assignment of error, Mr. Hendy argues the trial court applied the wrong standard of review to the OCRC's order. For the reasons that follow, we disagree.

{¶16} R.C. 4112.06 outlines judicial review of a decision of the OCRC. Pursuant to R.C. 4112.06(A), "[a]ny complainant, or respondent claiming to be aggrieved by a final order of the commission, including a refusal to issue a complaint, may obtain judicial review thereof[.]" Such proceedings "shall be brought in the common pleas court[.]" The standard of review to be applied is found in R.C. 4112.06(E), which states "[t]he findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole[.]" According to R.C. 4112.06, "a trial court must affirm a finding of discrimination under R.C. Chapter 4112, if the finding is supported by reliable, probative, and substantial evidence on the entire record." *Ohio Civ. Rights Comm. v. Case W. Res. Univ.*, 76 Ohio St.3d 168, 177 (1996).

{¶17} Mr. Hendy, in his first assignment of error, asserts that the trial court applied the wrong standard of review when reviewing OCRC's decision. Here, the record shows that the trial court applied the correct standard of review of OCRC's decision. In the August 1, 2022 order affirming the decision of the OCRC, the trial court found:

> Based upon the testimony of Hunter, James, and Cseplo, the [c]ourt finds that the OCRC's decision was based upon *reliable, probative, and substantive evidence*.

The record shows that the trial court reviewed the evidence and found OCRC's decision to be based on reliable, probative, and substantive evidence in the record.

{¶18} Mr. Hendy's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**THE LOWER COURT COMMITS [AN] ERROR [AT] LAW TO THE MATERIAL MATTER OF "JURISDICTION".**

{¶19} In his second assignment of error, Mr. Hendy argues the lower court lacked jurisdiction to hear the appeal because the OCRC lacked jurisdiction to issue its final order because no written oath was ever presented to the commission. For the reasons that follow, we disagree.

{¶20} R.C. 4112.04 outlines the powers and duties of OCRC. R.C. 4112.04(A)(6) states: "The commission shall * * * [r]eceive, investigate, and pass upon written charges made under oath of unlawful discriminatory practices[.]" In his assignment of error, Mr. Hendy argues there is nothing in the record that indicates such a written charge under oath was made to the OCRC, and argues the OCRC intentionally failed to produce such document.

{¶21} R.C. 4112.06(C) states:

> An objection that has not been urged before the commission shall not be considered by the court, unless the failure or neglect to urge such objection is excused because of extraordinary circumstances.

Here, a review of the record shows the OCRC indicated in the initial complaint that it had received a charge from FHCS. While the complaint does not indicate whether the charge was made under oath, Mr. Hendy never raised the issue of the production of the actual written charge before the OCRC as he is required to do under the statute. Additionally, Mr. Hendy did not raise the issue on appeal to the trial court either, nor has he argued any extraordinary circumstances.

{¶22} Mr. Hendy's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE LOWER COURT COMMITS [AN] ERROR [AT] LAW [WHEN IT] FAILED TO REVIEW THE PREPONDERANCE OF EVIDENCE.**

{¶23} In his third assignment of error, Mr. Hendy argues the trial court erred by not reviewing the evidence in the record when the trial court concluded that the OCRC's decision was supported by "reliable, probative, and substantial" evidence in the record. For the reasons that follow, we disagree.

{¶24} Our role, as the reviewing court, in considering the OCRC's order is more limited than that of the trial court. An appellate court is to determine whether the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence to support the OCRC's finding of discrimination. *Case W. Res. Univ.,* 76 Ohio St.3d at 177. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶25} To the extent that Mr. Hendy argues the trial court failed to conduct a thorough examination of the record before reaching its decision to affirm the OCRC's decision, we disagree. The judgment entry gives sufficient indication that the court reviewed all of the evidence. The trial court noted that all three FHCS testers who attempted to rent housing from Mr. Hendy testified

at the evidentiary hearing.  The entry outlines the testimony that each FHCS tester gave.  The first tester, an African American female, was told by Mr. Hendy she was "the kind of family that he was looking for."  The second tester, a Caucasian female, was dissuaded from viewing the property by Mr. Hendy.  She testified that Mr. Hendy told her that the area "isn't the best" and "that there are very few white people living over there."  After assuring Mr. Hendy that she did not mind, Mr. Hendy told her that he did not want her to drive over there and waste her time, and further responded "I want a family here. I don't want Lakisha Brown and her six kids living in my house. She can be living all around my house, that is fine but not in it."  The third tester presented as a married man with a disabled son and seizure alert dog.  He testified that he requested the pet fee to be waived due to his son's disability and told Mr. Hendy that the dog was not a pet.  Despite being presented with this information, Mr. Hendy insisted that the third tester would have to pay the pet fee.

{¶26}  The trial court also noted it considered the "newly admitted" evidence submitted by Mr. Hendy.  This newly admitted evidence that Mr. Hendy sought to have introduced included (1) a March 20, 2015 letter from the OCRC to Mr. Hendy explaining why it could not complete the investigation in 100 days; (2) a list of objections Mr. Hendy submitted to the OCRC in response to its final order; and (3) a reply brief filed by OCRC on February 26, 2018.  The trial court noted it was considering the list of objections only to the extent that it needed to determine which legal arguments were in fact raised before the OCRC, and it was considering the reply brief only for the legal arguments contained within it and not as actual "evidence."

{¶27}  The judgment entry sufficiently indicates that the trial court carefully considered the relevant issues before making its decision and did not merely act as a "rubber stamp" for the OCRC. We cannot find that the trial court abused its discretion in affirming the decision of OCRC.

**{¶28}** Mr. Hendy's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE LOWER COURT COMMITS [AN] ERROR [AT] LAW REGARDING CONSTITUTIONAL CHALLENGE TO R.C. 4112.04(A)(4)&(5) WHERE THE STATE AGENCY OCRC HAS "ABUSE(D) ITS DISCRETION" WHEN USING THE EXTRAORDINARY POWER GRANTED WITHIN THOSE STATUTES.**

**{¶29}** In his fourth assignment of error, Mr. Hendy argues the trial court erred in determining the OCRC did not violate his constitutional rights. For the reasons that follow, we disagree.

**{¶30}** In *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 20, the Ohio Supreme Court stated:

> Like statutes and ordinances, administrative rules may be constitutionally challenged on their face or as applied. The distinction between the two types of constitutional challenges is important. For example, the standard of proof depends upon which type of challenge is being made. * * * "[P]arties advancing an as-applied challenge must raise that challenge at the first available opportunity * * *.,. They need not do so if arguing a facial challenge.

(Internal citations omitted.) *Wymsylo* at ¶ 20. A facial constitutional challenge may be raised for the first time on appeal from an administrative agency's decision, but an as-applied constitutional challenge must be raised first in the agency to allow the parties to develop an evidentiary record. *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, ¶ 16

**{¶31}** "A party raising an as-applied constitutional challenge * * * alleges that the application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. The practical effect of holding a statute unconstitutional as applied is to prevent its future application in a similar context, but not to render it utterly inoperative." (Internal quotations omitted.) *Wymsylo* at ¶ 22, quoting *Yajnik v. Akron Dept. of Health, Housing Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, ¶ 14, quoting *Ada v. Guam Soc. of*

*Obstetricians & Gynecologists*, 506 U.S. 1011 (1992). "Because an as-applied challenge depends upon a particular set of facts, this type of constitutional challenge to a rule must be raised before the administrative agency to develop the necessary factual record." *Wymsylo* at ¶ 22, citing *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, ¶ 13.

**{¶32}** "It is settled law that an administrative agency is without jurisdiction to determine the constitutional validity of a statute." *State ex rel. Kingsley v. State Emp. Relations Bd.*, 130 Ohio St.3d 333, 2011-Ohio-5519, ¶ 18, quoting *State ex rel. Columbus S. Power Co. v. Sheward*, 63 Ohio St.3d 78, 81 (1992). While an administrative agency has no authority to declare the constitutionality of a statute, an "as-applied" challenge must be raised before an administrative agency in order for a record to be developed for review. *See Reading*, *supra*.

**{¶33}** Mr. Hendy concedes on appeal that he is alleging an "as-applied" constitutionality challenge. A review of the record shows that Mr. Hendy failed to raise an "as-applied" challenge to R.C. 4112.04 before the OCRC. The trial court found that "[a] review of the entire transcript of proceedings, including the transcript of the hearing before the [administrative law judge], along with the post[-]hearing briefs, do not show any prior argument concerning constitutional issues." The trial court goes on to note that the first discussion of any constitutional issues appear in a request that Mr. Hendy filed with the trial court, and not the OCRC, on April 12, 2021. Therefore, because Mr. Hendy did not raise the challenge before the OCRC, the trial court did not abuse its discretion in finding that Mr. Hendy's challenge to the constitutionality of R.C. 4112.04 was forfeited.

**{¶34}** To the extent that Mr. Hendy argues he had no knowledge of the requirement to raise the constitutionality issue before the agency because he proceeded *pro se*, the Ohio Supreme Court has "repeatedly declared that *pro se* litigants must follow the same procedures as litigants

represented by counsel." (Emphasis added.) (Internal quotations omitted.) *State ex rel. Neil v. French*, 153 Ohio St.3d 271, 2018-Ohio-2692, ¶ 10. "'It is well established that *pro se* litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.'" *Id*. quoting *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, ¶ 10.

**{¶35}** Mr. Hendy's fourth assignment of error is overruled.

### III.

**{¶36}** Mr. Hendy's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

CARR, J.
DISSENTS.

APPEARANCES:

CARY HENDY, pro se, Appellant.

DAVE YOST, Attorney General, and DAVID A. OPPENHEIMER, Principal Assistant Attorney General, for Appellee.